*In re* MARRIAGE OF JANET A. HYLAND, Petitioner-Appellee, and THOMAS R. HYLAND, Respondent-Appellant.

Second District    No. 80-398

Opinion filed April 7, 1981.

SEIDENFELD, P. J., dissenting.

Curtis R. Tobin, II, of Johnson, Johnson, Tobin & Ramon, of Belvidere, for appellant.

Peter Switzer, of Barrick, Jackson, Switzer, Long & Balsley, of Rockford, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

Respondent, Thomas R. Hyland, appeals from the judgment of the circuit court of Boone County dissolving his marriage to petitioner, Janet A. Hyland, dividing the property and ordering respondent to pay $25 per week child support. Respondent contests only that portion of the judgment pertaining to the division of property. The record disclosed the respondent and the petitioner were married on March 5, 1960; they have two children, ages 19 and 17. At the hearing to determine the property rights of the parties and to divide the property, petitioner testified that the marital residence had a value of $85,000 with a $53,000 mortgage, but that it was assessed for tax purposes at $93,000. She further averred that respondent was in the business of farming, had a projected income of about $25,000 from his agricultural pursuits, and had additional income from selling seeds, plowing snow, and from working at a newspaper. She indicated that her parents had gifted her with a residential lot valued at about $9,000, but that it was held in joint tenancy by the parties. Respondent's parents had also gifted the couple with a five-acre lot valued at $25,000. She also testified that her parents had given her $3,000 for each of the last two years and that she had had respondent invest this money in stocks so that it would not "just disappear." She testified the stock account, 300 shares each of Eastern Utility and Ohio Edison, was worth about $6,100. She also testified that after she was married, she had cashed in some bonds she had been given by her parents when she was a child, and deposited the receipts in a savings account in her name which currently totaled about $2,100. These savings had been commingled with other funds over the years. She testified that she presently had an annual income of about $18,000 from her self-employment as a draftsman.

Respondent testified he leased a 240-acre farm, 160 acres of which was tillable. The remaining acreage was used for his cattle herd. He and his father leased as a partnership about 100 acres of land which they cultivated along with each of their own farms, and they also custom farmed about 1,000 acres. Respondent's cattle herd was worth about $18,000, in addition to which he expected to realize approximately $8,000 from the sale of some calves. The partnership owned some equipment,

and respondent owned some equipment individually. Petitioner's Exhibit No. 1 indicated the equipment in which respondent had a full interest and the equipment in which he had a half partnership interest. Respondent's Exhibit No. 1, a financial statement, indicated that respondent's interest in the equipment was valued at $94,390. This figure apparently did not include any value for a John Deere tractor recently purchased by respondent which petitioner testified cost $53,000. Respondent's reply brief on appeal asserted the parties' testimony was that this tractor cost $35,000, but we were unable to find this figure in the record. Respondent also testified that he had to make a $32,280 annual payment on a $255,000 operational loan from the Belvidere Bank, which was secured by the equipment and also by his father's farmland. Finally, he averred that he had a one-half interest in a $20,398 stock account at the Shearson-Stone brokerage.

During closing argument, petitioner's attorney advised the court that an equitable distribution of the property would be that the court award her the marital residence until her minor son attained the age of 18, that it then be sold, and that the proceeds be divided equally. She added she should be given the lot given to her by her parents, the stock purchased from the $6,000 gift from her parents, the $2,100 savings account, $50 per week child support, and her 1977 Dodge car.

The court found that the 600 shares of stock recorded in petitioner's name were nonmarital property of petitioner. It also found the $2,100 savings account in petitioner's name was marital property, and awarded it to the husband. Both parties were found fit to have custody of the minor child and able to contribute to his support. Next, in lieu of maintenance, the court awarded petitioner the marital residence, subject to the existing mortgage of $53,000. The court awarded to each party the real property given by that party's parents. It awarded to respondent the funds and margin accounts or equity accounts existing at the Shearson-Stone office; the entire interest in all the farm equipment, livestock and all other farm-related assets; certain household goods; a 1978 Dodge pick-up truck and a 1970 Dodge car. The court also burdened respondent with the existing $255,000 loan at the Belvidere Bank and ordered him to pay $25 per week child support. Both parties were ordered to contribute equally to the future college expenses of their son, Daniel, and were barred from seeking maintenance from each other in the future.

Respondent's attorney questioned the court's award of the entire marital residence to petitioner when she had only requested half of the proceeds from its sale. The court stated the basis for the award was

"[A]n equitable division of the property, * * * taking into consideration all of the assets of the parties, the potential earning of the parties, the equities of the parties and the contributions of the

parties, past, present and also as an award, reasonable award, in lieu of maintenance, giving consideration to the fact that both of the parties were obligated to support the children herein."

The court indicated that petitioner was given the marital residence in lieu of maintenance in order to foreclose any future claims for such relief and in order to facilitate an equitable division of the marital assets. Respondent filed timely notice of this appeal.

Respondent's initial contention is that the court's apportionment of property and indebtedness was against the manifest weight of the evidence and an abuse of judicial discretion. He asserts that the court awarded the petitioner the marital residence in lieu of maintenance when she had not asked for maintenance, and had in fact asked for only half of the proceeds from its sale after her son attained the age of 18; that the court failed to place a value on the farm assets, and that the court awarded petitioner a value of $35,000 equity in the house, while awarding respondent $129,000 more in liabilities than in assets.

Section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503) requires that the court consider when dividing the marital property:

"(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

* * *

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(8) the custodial provisions for any children;

(9) whether the apportionment is in lieu of or in addition to maintenance; and

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income." Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(1), (2), (3), (4), (7), (8), (9), (10).

■■ The Marriage and Dissolution of Marriage Act does not prescribe an equal division of the property (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563), but only that the trial court must consider all relevant factors before

exercising its discretion. (*Schuppe v. Schuppe* (1979), 69 Ill. App. 3d 200, 205.) In its division of the marital property, the trial court stated that it had considered the factors set out in section 503 of the Marriage and Dissolution of Marriage Act. It specifically stated that it had awarded to the wife the entire marital residence in lieu of maintenance, first, because it was an equitable division of the property (the wife retained the marital residence and the husband was awarded the cash assets), and second, because it wanted to bar petitioner from seeking maintenance in the future. Section 504 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 504) allows for maintenance only where a party's needs cannot otherwise be provided.

Respondent further contends, however, that the Act requires the court to attempt an equalization of the assets and liabilities of the parties in dividing the marital property, citing *Hulslander v. Hulslander* (1977), 55 Ill. App. 3d 981. The Illinois courts, however, have held that no precise arithmetic equality is required in dividing property (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123), and the award will not be reversed unless it is against the manifest weight of the evidence. *Schuppe v. Schuppe* (1979), 69 Ill. App. 3d 200.

■■ If the court has considered all the factors set out in section 503 of the Marriage and Dissolution of Marriage Act, its discretion will only be reversed where

"* * * the trial court in the exercise of its discretion act[ed] arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceed[ed] the bounds of reason and ignore[d] recognized principles of law so that substantial injustice resulted. This is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court." *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127.

■■■ The trial court awarded respondent all of the farm equipment, the five-acre lot from his parents, the $2,100 savings account which was in petitioner's name and the equity in the Shearson-Stone funds, margin and equity accounts. The record reflected his income averaged about $32,000 per year; petitioner's was $18,000. The court considered this award, together with respondent's yearly income, to be sufficient to offset the large bank loan, while allowing him to maintain his normal standard of living and to continue his agricultural pursuits. We believe that the trial court's award was designed to keep the farm assets intact and operational so that the Belvidere Bank loan could be repaid. The wife received her nonmarital stock and was awarded the marital residence, her car, and the lot which her parents had given to the parties. She was also burdened with the $53,000 mortgage due on the house. The $25 per week award for child

support was only one-half the amount she had requested, and that payment would cease in slightly more than a year's time upon the minor child's attainment of majority. The primary objective of the court in the division of property is to provide adequate support for the children of the marriage; the secondary objective is to place the parties in a position from which they can begin anew. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1133.) We believe the court's division of property in this case was fashioned in order to achieve this objective and conclude the division was not against the manifest weight of the evidence and no abuse of judicial discretion is found on the record.

Respondent next alleges that the court erred in dividing the property by failing to designate which property was marital or nonmarital, by failing to value the farm equipment and other agricultural assets, and by failing to value the indebtedness of the parties. He argues that the court in its award burdened him with repayment of the $255,000 Belvidere Bank loan without giving him sufficient assets to cover the loan.

In *Robinson v. Robinson* (Ky. 1977), 548 S.W.2d 155, cited by respondent, the court reversed the division of property by the trial court because it failed to place a value on the marital residence and because it failed to detail whether the property was marital or nonmarital property as required pursuant to the Uniform Marriage and Dissolution of Marriage Act. (9A Uniform Laws Annotated §307 (1979).) Respondent's contention that the court here failed to designate which property was marital or nonmarital is not supported by the record. The court specifically found the utility stock purchased from the $6,000 gift from petitioner's parents was nonmarital property. It also found the bank account solely in petitioner's name to be marital property. All the other property was held either in joint tenancy or was acquired during the marriage and was presumed to be marital property pursuant to section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(b)).

Turning to respondent's second contention that the court failed to value the farm assets, this court in *In re Marriage of Leon* (1980), 80 Ill. App. 3d 383, reversed an award of maintenance and a division of marital property because the court failed to find the value of husband's insurance business. Although that court had before it the business books and records, and the testimony of the firm's accountant, there was no testimony before the court as to the accountant's opinion as to the value of the business, or any other competent testimony regarding its value. Moreover, although the wife's attorney in closing argument applied a formula valuing the business, there was no cross-examination to test the formula's accuracy.

Although section 503(c)(2) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(2)) requires the court to consider the value of the property set apart to each spouse, the court is not required in its judgment to place a specific value on each item of property. (*In re Marriage of Thompson* (1979), 79 Ill. App. 3d 310.) The Act only requires that there be competent evidence of the value and that the court's division of the property be supported by the evidence. (*In re Marriage of Woolsey* (1980), 85 Ill. App. 3d 636; *cf. In re Marriage of Leon* (1980), 80 Ill. App. 3d 383; *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627.) In the case at bar, the court admitted into evidence respondent's Exhibit No. 1 which placed a value on his farm equipment, his livestock herd and his other agricultural assets. Petitioner also testified that respondent had recently purchased a John Deere tractor valued at $53,000, and respondent testified that he expected his calves would be sold for about $8,000. Although there was no expert testimony regarding the value of the farm and the equipment, there was sufficient competent evidence for the court to determine the value of the property. Further, unlike the situation in *In re Marriage of Leon*, respondent had an opportunity to introduce either expert or contrary testimony as to the value of the farm assets, or to impeach the petitioner's testimony by cross-examination.

Finally, the court also heard competent testimony regarding the amount of indebtedness associated with the farm and the marital residence, which testimony was not controverted. Therefore, the court need not have found a specific value of indebtedness.

Accordingly, we do not believe that the court abused its discretion in not finding a specific value for the farm assets, or for the indebtedness related to the farm and for not designating the property held in joint tenancy as marital or nonmarital property.

The judgment of the circuit court of Boone County is affirmed.

REINHARD, J., concurs.

Mr. PRESIDING JUSTICE SEIDENFELD, dissenting:

Because the evidence in the record does not support the judgment of the trial court, I would reverse and remand this cause for further proceedings.

The trial court was faced with difficult problems in valuing the net worth of the husband's farming operation. The only solid evidence of his assets and liabilities was a financial statement which listed farming assets at roughly $155,000 and farming liabilities at about $309,000. However, the husband also testified that he worked in partnership with his father on some land. He presented a list of farming equipment in which he had a

one-half interest, but did not indicate the value of those items. No attempt was made by either party to value the husband's partnership interest, which was apparently an informal agreement.

The wife did not seek to rebut any of the husband's valuation evidence, except to note that he recently bought a tractor which she "guessed" was worth $53,000.

The majority does not disagree with the husband's contention that he was awarded significantly more marital debts than assets, while the wife was given the marital home with $35,000 equity, a lot valued at $9,000, as well as other items. The majority concludes, however, that since the court referred to several of the factors listed in section 503 of the Marriage and Dissolution of Marriage Act and an equal division is not mandatory, the award was not against the manifest weight of the evidence.

I agree with the majority that the court is not required to specifically value marital property if there is evidence of value in the record. I further agree that the division of marital property does not need to be equal, as a proper application of the 10 factors set forth in section 503 may often dictate an unequal division. However, I cannot affirm a property division where the record indicates that the award is highly disparate and there is insufficient evidence that the section 503 factors were applied to produce the disparity. See *In re Marriage of Amato* (1980), 80 Ill. App. 3d 395.

While the distribution of marital property is a discretionary matter for the trial court, it is required to consider the factors enumerated in section 503. (*In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 1085.) Absent a finding of valuation by the trial court, the appellate court can only review the property award based on evidence of value presented by the parties. Since the division here is highly unequal, the award is sustainable only if the section 503 factors justify the inequality. See *In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 1139-40 (Craven, J., dissenting).

I disagree with the standard of review adopted by the majority in its quotation from *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127. In my view, the passage cited from that case allows too much discretion to the trial court and may defeat the legislative objective of creating a more equitable scheme of property distribution. (See *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 576.) In the case at bar, the only reference to the section 503(c) factors made by the trial court was the following:

> "As an equitable division of the property, is the basis for the award, taking into consideration all of the assets of the parties, the potential earning of the parties, the equities of the parties and the contributions of the parties, past, present and also as an award, reasonable award, in lieu of maintenance, giving consideration to

the fact that both of the parties were obligated to support the children herein."

A recitation of certain relevant factors without stating how those factors support the unequal award gives little guidance to a reviewing court.

The record does not support the conclusion that the factors mentioned by the trial court so favored the wife that the property award was just. The only nonmarital asset awarded was allocated to the wife, namely, the stock valued at $6,000. Certainly, the record reflects that the contribution of the husband was at least as substantial, if not more so, than the wife's. She agreed that the husband worked 18 hours a day. The court's statement that the marital home was awarded in lieu of maintenance overlooks the fact that the wife did not request maintenance and would not have been entitled to it on this record.

It is true that the husband may have higher potential earnings than the wife; however, that factor alone cannot justify the lopsided property distribution. The uneven property distribution, as reflected by the valuation in the record, is not supported by section 503(c) of the Act. I would reverse and remand with directions to consider the nature of assets and liabilities in the division of marital property.